**UNITED STATES of America,**

v.

**Brian BARNER.**

**Nos. 4:CR–97–0207–02, 4:CV–00–1809.**

United States District Court,
M.D. Pennsylvania.

Aug. 7, 2003.

John J. McCann, U.S. Attorney's Office, Williamsport, PA, for USA.

Ronald C. Travis, Rieders Travis, Williamsport, PA, for Brian Barner.

### CERTIFICATION AND ORDER

MUIR, District Judge.

THE BACKGROUND OF THIS CERTIFICATION AND ORDER IS AS FOLLOWS:

This case originated in the conviction of Brian Barner for drug offenses involving substantial amounts of cocaine powder and crack cocaine. Attorney John A. Gummo serves on the Criminal Justice Act (hereinafter at times "CJA") panel and was appointed to represent Barner who pled guilty and was sentenced to a cumulative term of imprisonment of 35 years. Barner unsuccessfully appealed his conviction to the United States Court of Appeals for the Third Circuit.

On October 12, 2000, Barner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The fundamental basis of Barner's § 2255 motion was that his Sixth Amendment right to counsel was violated because Gummo provided ineffective assistance of counsel. Gummo's alleged errors and omissions in representing Barner were the focal point of the twenty-one day evidentiary hearing held in connection with Barner's § 2255 motion. On seventeen of those twenty-one days, Gummo was called to testify as a witness.

On October 25, 2001, Gummo filed a motion to be compensated for the time spent fulfilling the obligations imposed upon him as a result of Barner's § 2255

motion. At that time Barner's § 2255 motion remained pending. By order dated November 2, 2002, we denied Gummo's initial motion without prejudice, reasoning that his entitlement to compensation appeared to depend in part upon the validity of Barner's ineffective assistance claims. *See* 18 U.S.C. § 3006A(d)(1) ("No reimbursement for expenses in defending against malpractice claims shall be made if a judgment of malpractice is rendered against counsel furnishing representational services under this section.")

On May 21, 2003, Gummo filed a "Second Motion for Compensation and Reimbursement of Reasonably Incurred Expenses and Other Necessary Services." The motion did not specify the amount of reimbursement sought by Gummo. A certificate attached to the motion indicated that the government concurred in the motion. In the body of his motion Gummo represents that Barner's current counsel, attorney Ronald C. Travis (who is a CJA panel attorney), also concurs in the motion.

On July 9, 2003, we issued an opinion and order in which we concluded that the underlying § 2255 motion filed by Barner did not have merit because Gummo's representation met the constitutional standard. Gummo's second motion for compensation and reimbursement did not fully ripen upon the issuance of that opinion and order.

As originally filed, the motion did not provide any information regarding the specific amount of compensation sought by Mr. Gummo. On July 9, 2003, we issued an order requiring the Clerk of Court to provide Gummo with the appropriate governmental voucher form which because of the amount claimed would require the approval of the Chief Judge of the Court of Appeals or his designate. In the course of representing Barner in the underlying prosecution through Barner's appeal, Gummo received $12,575.31. Consequently, we are of the view that any additional amount sought by Gummo now is required to be approved by the chief judge of the circuit or his designate.

On July 15, 2003, Gummo filed four voucher forms in which the cumulative amount sought for compensation and reimbursement is $14,235.50. That entire figure is based on the time Gummo devoted to assist Barner, the government, and the court in litigating Barner's § 2255 motion, including the seventeen days on which Gummo testified at the § 2255 hearing. We view Gummo's pending motion for reimbursement and compensation as being based not on any *expenses* incurred by Gummo, but upon the *costs* imposed upon him as a result of Barner's § 2255 motion.

The material circumstances raised in Gummo's motion for reimbursement invoke the principle that "[o]ne valuable resource for the entire legal system is time, a prioritized commodity. By choosing one activity, one foregoes the opportunity to do something else, thereby incurring opportunity costs." Hon. Stephanie Domitrovich, *Utilizing An Effective Economic Approach To Family Court: A Proposal For A Statutory Unified Family Court In Pennsylvania,* 37 Duquesne Law Review 1, 36 (Fall 1998); *See also* Michael J. Warshauer, *Case Evaluation And Selection: Can You Afford To Take The Case?,* Association of Trial Lawyers of America Annual Convention Reference Materials Volume 1 (July, 2002).

As summarized by Abraham Lincoln, "[a] lawyer's time and advice are his stock in trade." OXFORD DICTIONARY OF AMERICAN LEGAL QUOTATIONS 257 (Fred Shapiro, ed., 1993). The total cost at issue here is the cumulative time Gummo could not allot to other cases or clients because of the ineffectiveness claim leveled against him; each hour that Gummo devot-

ed to this case was one that he could not invest in any other legal matter.

Gummo was subpoenaed to testify at Barner's § 2255 hearing. The periods set forth in Gummo's vouchers are reasonable and were necessary for us to rule properly on Barner's § 2255 motion. We conclude that Gummo was obliged to incur the opportunity costs resulting from the time devoted to this case because he did not opt to participate voluntarily in this litigation.

On July 17, 2003, we issued an order requiring the government to advise us of whether it concurred in the amount of compensation and reimbursement specified by Gummo. On August 1, 2003, the government filed its concurrence in Gummo's motion for compensation and reimbursement, thereby ripening the motion for disposition.

The core issue to resolve in ruling on Gummo's motion is whether an attorney appointed to represent a defendant is entitled to compensation for the opportunity cost imposed upon the attorney as a result of the defendant's claim that the attorney violated the defendant's Sixth Amendment rights by providing ineffective assistance of counsel.

Our analysis of that issue begins with the governing statute found at 18 U.S.C. § 3006A, entitled "Adequate representation of defendants." The most common claims filed under that law are those based on the appointed attorney's costs and expenses incurred while the attorney represents the defendant. However, those are not the only fees and costs recoverable under § 3006A.

Subdivision (d) of that statute, entitled "Payment for representation," provides in relevant part as follows:

> Attorneys may be reimbursed for expenses reasonably incurred, . . ., and the costs of defending actions alleging malpractice of counsel in furnishing representational services under this section.

> No reimbursement for expenses in defending against malpractice claims shall be made if a judgment of malpractice is rendered against the counsel furnishing representational services under this section.

18 U.S.C. § 3006A(d)(1). Those two sentences were added to § 3006A pursuant to § 211 of the Federal Courts Improvement Act of 2000 (hereinafter "Improvement Act"). For the purposes of ruling on Gummo's motion, we note that the amendment draws a distinction between "expenses" and "costs."

The legislative history of the Improvement Act includes statements from Senators Hatch and Grassley. Senator Grassley stated the following on July 25, 2000, upon his introduction of the bill in the Senate:

> The Judicial Conference has expressed to me their concern over a growing trend of "Criminal Justice Act" (CJA) panel attorneys being subject to unfounded suits by the defendants they previously represented and the financial damage these attorneys have to deal with when they must pay to defend themselves in these actions. These unfair costs have the potential of having a chilling effect on the willingness of attorneys to participate as panel attorneys and will only make it more difficult to obtain adequate representation for defendants. Currently, the CJA authorizes the Director of the Administrative Office of the United States Courts to provide representation and indemnify federal and community defender organizations for malpractice claims that arise as a result of furnishing representational services. Panel attorneys are the only component of the appointed counsel program who are not permitted to receive CJA-funded coverage for any costs associated with defending against a malprac-

tice claim by a CJA client. Our bill rectifies this oversight in the CJA, and provides CJA panel attorneys the same protection as other federal defenders. 146 Cong. Rec. S7544 (statement of Sen. Grassley).

Senator Hatch's explanation of the reasons behind § 211 of the Improvement Act is similar to that offered by Senator Grassley. On October 19, 2000, Senator Hatch made the following comments:

> In addition, the amendment contains a provision designed to address the growing trend of Criminal Justice Act ("CJA") panel attorneys being subject to unfounded suits by the defendants they formerly represented. Under current law, CJA panel attorneys must pay their own legal expenses in defending malpractice suits brought by former clients. The result is a chilling effect on the willingness of attorneys to participate as CJA panel attorneys—a chilling effect that serves only to make obtaining adequate representation for defendants more difficult. Under current law, the Director of the Administrative Office of the United States Courts is authorized to provide representation for and indemnity to federal and community defender organizations for malpractice claims that arise as a result [of] furnishing representational services. No such provision, however, is made for CJA panel attorneys. The amendment rectifies this situation and provides CJA panel attorneys with the same protection afforded other federal defenders.

146 Cong. Rec. S10848 (statement of Sen. Hatch).

The statements made by Senators Grassley and Hatch indicate that the fundamental, if not singular, purpose of § 211 of the Improvement Act was to place CJA panel attorneys in the same position as other federal public defenders when a defendant raises a malpractice claim against the appointed attorney.

Under the circumstances of this case, there are two reasons *not* to distinguish an ineffectiveness claim brought in a § 2255 motion from a claim of malpractice raised in a civil action. The first and most obvious reason is that in both situations the basic allegations against the attorney are similar if not identical (i.e., the quality of the attorney's representation fell below the applicable standard). *See* Gregory G. Sarno, Legal Malpractice In Defense Of Criminal Prosecution, 4 A.L.R.5th 273, 1992 WL 767541 (1993) (collecting cases on the issue of "[w]hat action, or failure to act, will stamp an attorney as having rendered such ineffective counsel to a criminal defendant that the attorney may be subject to a civil malpractice suit by the criminal defendant?"); *Bigelow v. Knight*, 737 F.Supp. 669 (D.D.C.1990) (plaintiff collaterally estopped from pursuing civil malpractice claim because his prior claim of counsel's ineffectiveness had been rejected); *Alberici v. Tinari*, 374 Pa.Super. 20, 542 A.2d 127 (1988) (same). The second and more compelling reason in this case to compare Barner's ineffectiveness claims with a malpractice claim is that the costs at issue here are strictly Gummo's opportunity costs.

A federal public defender is paid by way of a salary which is not directly dependent upon the type or number of cases handled by a given public defender. A public defender's salary is not based upon the number of hours worked. Consequently, a public defender does not incur the type of opportunity costs at issue in Gummo's pending motion. Only CJA panel attorneys are subject to the type of potential opportunity costs raised in Gummo's motion.

In order to provide CJA panel attorneys with the same amount of indemnity protec-

tion available to public defenders, the terms and provisions of § 3006A should be interpreted in a manner that insulates CJA panel attorneys from this type of opportunity cost. Such an interpretation is fully consistent with the purposes of the amendment embodied in § 211 of the Improvement Act, as expressed by Senators Grassley and Hatch.

Interpreting § 211 in any other manner would drastically reduce the protections afforded to CJA panel attorneys and clearly reduce the number of attorneys willing and much needed to serve on CJA panels. In either a malpractice action or a § 2255 proceeding, a CJA panel attorney may be required to devote substantial time to his or her defense, thereby incurring significant opportunity costs.

As is the case with a number of other attorneys serving on the CJA panel for this court, Gummo is a sole practitioner. Many other lawyers on the CJA panel work in small law firms with few associates and partners. The income lost to such lawyers and law firms as a result of defending against a malpractice claim or an ineffectiveness claim could be devastating. Such a possibility has in fact become a reality in this case, where Gummo appeared in this court for seventeen working days—more than three working weeks—to testify. In paragraphs 24 and 25 of his motion, Gummo "certifies and verifies" that "as a result of his preparation for and scheduling for various dates of testimony since February, 2001, to present for the 2255 hearing" 1) he was "unavailable on numerous occasions to attend to clients as well as potential clients and the duties and obligations related to representing clients in his private practice," and 2) the requirements of this case "has had a significant impact on his private practice and his ability to serve other clients and potential clients including but not necessarily limited to, rescheduling of matters including

hearings, rearranging appointments and other obligations, and on some occasions, not being available to be retained by new clients." (Document 504, p. 5, ¶¶ 24, 25).

We are of the view that denying Gummo's motion for reimbursement would result in the same chilling effect described by Senators Grassley and Hatch in the statements they made in support of the Improvement Act. With respect to the hourly rates set forth in Gummo's motion, we note that they are below the prevailing rates in this area for the services of an attorney with Gummo's experience and skill. Although those rates will not fully compensate Gummo for his time, we are bound to apply them in compensating Gummo. Based on the unique circumstances of this case, most especially the number of days on which Gummo testified, we conclude that the funds requested by Gummo are necessary to provide fair compensation for services of an unusual character and duration and we will so certify. Gummo should seek approval of the full amount from the chief judge of the circuit or his designate.

In closing we acknowledge the reported decisions holding that the purpose of § 3006A

was not to benefit lawyers; it was for the benefit of indigent defendants to assure their constitutional right of adequate representation by competent counsel, and to ease the burden on those lawyers who, as a public service, voluntarily and without compensation gave of their professional skill in the defense of indigents.

*U.S. v. Tutino*, 419 F.Supp. 246, 248 (S.D.N.Y.1976) (Cooper, J.) (quoting *United States v. Mazella*, Dkt. No. 72 Cr. 195 (S.D.N.Y.1972)); *See also Mills v. United States*, 713 F.2d 1249, 1256 (7th Cir.1983) ("This compensation [under § 3006A] was intended to ease the financial burden on

the attorney, who offers his services to a defendant as a professional public duty. The level of fees established under the Act was intended to offer some but not full compensation for the appointed attorney and to provide adequate defense services for his client.") (quoting H.R.Rep. No. 1546, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code. Cong. & Ad. News 3982, 3984).

We are of the view that awarding Gummo the compensation he currently seeks is consistent with the goals of § 3006A because it will minimize the burden on CJA panel attorneys under these circumstances, while simultaneously maximizing the likelihood that defendants will continue to receive adequate representation pursuant to § 3006A.

NOW, THEREFORE, IT IS CERTIFIED THAT:

1. It is reasonably necessary for the litigation of Barner's § 2255 motion that John A. Gummo be compensated for his time in the amount of $14,235.50.

2. That amount is necessary to provide fair compensation to Gummo for services of an unusual character and duration.

NOW, THEREFORE, IT IS ORDERED THAT:

1. By reason of the fact that our limit on approval of expenditure of funds has been exceeded, the Clerk of Court shall send Gummo's motion to the Chief Judge of the circuit or his designee for disposition.

2. The Clerk of Court shall send to the Chief Judge of the Circuit or his designee a copy of our opinion and order dated July 9, 2003, relating to the underlying § 2255 motion.

3. The Clerk of Court shall send a copy of this certification and order to Mr. Gummo.